ALBERT STAFRIN, APPELLEE, v. EMMET L. MALSTER, APPELLANT.

FILED MAY 8, 1931. NO. 27733.

*Flansburg & Lee,* for appellant.

*George F. Corcoran* and *Thomas & Vail, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

Goss, C. J.

This is a *quo warranto* action brought by plaintiff to oust defendant as president and general manager of the York Water Company and for a judgment that plaintiff is entitled to these offices. From a judgment for plaintiff the defendant appeals.

The York Water Company is incorporated under the laws of this state and furnishes water to the city of York and its inhabitants. It is capitalized at $100,000, having 1,000 shares at $100 each. Prior to April 24, 1928, Albert Stafrin and his wife owned 500 shares and Emmet L. Malster and his mother-in-law, Elizabeth Pfeffer, owned 500 shares. The amended articles in force provided for a board of not less than three directors, to be elected by and from the stockholders at the annual meeting on the last Monday in January each year, and for a president, vice-president, secretary and treasurer, to be elected by the board of directors, of which officers the secretary and treasurer may or may not be stockholders. No formal by-laws were ever adopted, but by general understanding or agreement the corporation had been conducted as a two-family affair on an equality as to ownership of stock, offices and emoluments, with two directors from each family. At the stockholders' annual meeting on January 30, 1928, the minutes show that Albert Stafrin, Emma K. Stafrin, Elizabeth Pfeffer and Emmet L. Malster were elected directors. At the meeting of these directors on the same day, Stafrin was chosen as president and Malster as vice-president, both to serve until the next annual meeting. The directors also adopted a resolution appointing Stafrin general manager and Malster assistant general manager and plant superintendent. Each was to get $200 a month and 70 cents an hour for overtime, the salaries and compensations to date from January 1, 1928. On February 13, 1928, the parties in interest also attested in writing an agreement by all of these stockholders, in the form of a resolution, to the effect that Stafrin should be general manager and Malster assistant general manager, each to retain such position so long as he performs his duties

in an efficient manner, the salaries to be paid by the two equal stockholdings, the compensation for services of Stafrin to be deducted from his dividend earned account and that of Malster to be deducted from the dividend earned account of Elizabeth Pfeffer; in case of sickness, or any occasion for necessary absence of either, a competent substitute might be hired, if deemed necessary, to be paid by the one whose absence required the hiring; and, lastly, that Stafrin and Malster should retain their positions just so long as the two equal stockholdings of the company see fit to retain their services, but if they should see fit to end the services of either or both men it would be necessary for the two equal stockholding groups to replace them with competent men.

April 21, 1928, Stafrin and wife entered into a written contract with Joe R. Furman of York to sell, convey and assign their half interest in the company, consisting of 500 shares of stock, for $30,000, in exchange for Furman's café, valued at $10,000, for $5,000 additional to be paid by Furman in cash, and the balance, $15,000, to be evidenced by Furman's note for $15,000, due on or before seven years from May 1, 1928, bearing 5 per cent. semiannual interest. Three hundred shares of the stock were to be pledged to secure the note. All the stock was to be placed in escrow at the American State Bank in York and the deal was to be closed at that bank on or before May 1, 1928. The contract recites that the stock was subject to a present bonded indebtedness of $65,000.

On April 24, 1928, the Stafrins surrendered their stock certificates and had the water company issue new certificates in Furman's name. The evidence seems to indicate that the stock, note and papers relating to the Furman deal with Stafrin were left with the bank, though there is some confusion as to just how much stock was understood to be pledged to secure the note and how much was otherwise to be in escrow, but that is not material in view of what happened. Stafrin took over the Furman restaurant, operated it for 14 days, and sold it for $7,500, for which he received a note from the purchaser. Though the mat-

ter was not in any written agreement, among misrepresentations later alleged by Furman in a suit to rescind, it seems to have been represented by Stafrin, and so understood by Furman, that the latter and his wife would, as the owners of the stock, step into the places occupied by the Stafrins as directors, officers and employees in the water company. But the Malster group refused to allow the Furmans to assume those positions. On or about September 26, 1928, Furman brought suit against the Stafrins in the district court, setting up the agreement and alleging misrepresentations as to values of the stock, as to the financial condition of the corporation, and as to the positions to be enjoyed by plaintiff in the water company, and praying for rescission. Issues were joined, trial was had, and by a decree, signed September 16, 1929, rescission was adjudged. The stock was turned back to Stafrin about October 15, 1929. It may be concluded that, from April 21, 1928, to the end of the litigation with Furman, Stafrin was claiming that Furman owned the stock and therefore Stafrin assumed and exercised no functions as a stockholder, director, officer or employee of the water company. During this interim of about 18 months when Stafrin was acting for the company in no capacity, the time arrived, in January, 1929, for the annual meetings of the stockholders and directors. The stockholders' meeting was held on January 28, 1929. It was stipulated that all stockholders had notice. Neither Stafrin nor Furman appeared. They were in the midst of their litigation, each claiming the other owned the stock. Only the 500 shares of the Malster group was represented and so the stockholders' meeting was adjourned without day. The directors met on January 30, 1929. Mr. Malster and Mrs. Pfeffer were the only directors present. These two elected the following officers of the corporation: President, Emmet L. Malster, vice-president, Elizabeth Pfeffer. By resolution they appointed Emmet L. Malster general manager at a salary of $225 a month and to receive compensation of $75 a month additional for overtime necessary to care for the plant.

Under article 11 of the articles of incorporation a majority of the stock issued must be present and voting for any proposition in order to carry it. So the stockholders' meeting did quite right to adjourn without electing any directors. Article 7 provides that the directors and officers shall hold their respective offices for a period of one year from the time of their election and until their successors are duly elected and qualified.

Stafrin testified that, after the decree in the Furman case (which became effective October 15, 1929), he went to the office of the company and had a conversation with Mr. Malster. Stafrin offered his services and told him he thought the decision set everything back where it was when he sold to Furman. Malster said Stafrin was out and "had no right there any more;" that then and on several later occasions in the next few weeks, Malster refused to let him function either as "manager or director;" that he did not consent to Malster's increased salary.

This suit was begun November 15, 1929. Its purpose was to oust Malster from the "offices" of president and general manager of the company. The judgment was entered July 30, 1930, and the motion for new trial was overruled August 7, 1930. The court found Stafrin entitled to these "offices" and ordered Malster ousted. In a memorandum opinion the district court stated: "The meeting of January 30, 1929, at which Emmet L. Malster was chosen president and general manager was illegal and all of the proceedings had there invalid and of no binding effect on the corporation."

We have made this full statement of the facts in order to present a rather complete picture. The briefs discuss many interesting propositions of law relating to private corporations. We are asked to decide, among other things, whether a general manager is an officer. But, in our view of the situation, the matter can be decided on the question as to whether, on the merits, the evidence sustains the judgment, irrespective of whether a general manager of this particular company is an officer. So we do not pass upon that question.

It must be borne in mind that the water company is required to give constant public service. No controversy as to officers or employees, no disputes as to internal management, can abate for an instant the continuing duty to furnish water to the community for domestic and for public use. The health and welfare of the people and the safety of property from conflagration place this imperative demand above private quarrels of stockholders and officers. So, when Stafrin had his stock transferred to another and, for 18 months, refused to function as a stockholder, as director, president or general manager, his abandonment of the exercise of these functions amounted to an abandonment, at least for this period, of his offices and emoluments. Under the articles of incorporation the directors and officers held their offices for one year and until their successors are elected and qualified. This proceeding in quo warranto related only to the office of president and to the position of manager, whether that be an office or not, so we are not concerned here with Stafrin's status as a stockholder or director. The agreement of February 13, 1928, expressly contemplated that Stafrin, who was therein appointed, should "retain this position just so long as he performs his duties as general manager in an efficient manner." When the next annual meeting of the directors was held on January 30, 1929, the Stafrin group remained away, just as they had from the stockholders' meeting. The necessity to carry on was exigent. The articles provided for not less than three directors. By conduct and agreement, but without conventional by-laws so fixing the number, the company had been operating with four directors, so that each family group could have two. The Stafrin group remained away. The other two attended and selected Malster as president and as general manager. In the circumstances, and under the spirit of the articles of incorporation, we think the two directors constituted a quorum and had the power to take such action.

When Stafrin lost his suit and he was reinvested with legal title to his stock, he was not, at that instant and by

that token, reinvested with the office of president or with the position of general manager, which he had abandoned 18 months earlier. His remedy was to seek restoration to office and to the title and salary of general manager through election by the directors of the company and not through the courts. We are of the opinion that the evidence did not justify relief in *quo warranto* and that the trial court erred in granting the prayer of the plaintiff. The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.